I would grant the application for rehearing. I concur with the opinion except as to Part IV. I must respectfully dissent from the holding in Part IV that the summary judgment was improper on the claims of suppression and breach of fiduciary duty relating to Speaks's failure to inform Fisher that Thomas was both an owner of Comer Plantation and the owner of the real-estate firm charged with selling the property.
The majority concludes that Speaks's representation of Thomas involved a personal interest in terms of an employee-employer relationship. I disagree. A real-estate agent is more akin to an independent contractor than to an employee. Speaks's only personal interest was to *Page 469 
earn his fee, and the fee depended upon whether Speaks procured a buyer who ultimately purchased the property. This personal interest is present in every transaction in which a real-estate agent participates. The fact that one seller among a group of sellers was also Speaks's employer does not give Speaks a greater personal interest in the transaction.
The majority states that "[w]hile Fisher was aware of Speaks's duties to the sellers as a group, he was unaware of Speaks's personal stake in the success of the transaction." 772 So.2d at 467. However, Fisher was in fact aware of Speaks's personal stake — his desire to earn a commission. Fisher claims that he would have hired someone independent to advise him had he known that Speaks worked for Thomas. However, Fisher never hired Speaks to advise him, and the evidence shows that Fisher knew all along that Speaks was an agent of the sellers. I do not agree that Speaks was acting as Fisher's implied agent. Fisher even commented to Thomas that Speaks "was very representative for the sellers." (Fisher deposition, p. 283.) Both the draft and the final contract that Fisher signed indicated that Speaks was an agent of the sellers and that no broker was operating on Fisher's behalf. (C. 252, 273.)
If the facts were different and Fisher had engaged Speaks as his agent and Speaks had failed to disclose that the owner of the real-estate company he represented was a minority seller, I would then agree that Speaks had an improper interest in the sale of the property. However, under the facts as they exist in this case, Fisher was aware of Speaks's duties to the sellers. The fact that Speaks's employer was one of the sellers does not give Speaks such a personal interest in the consummation of the sale as would support Fisher's claims of fraudulent suppression or breach of fiduciary duty.
Furthermore, Fisher has not shown that Speaks's failure to disclose Thomas's ownership of Locators harmed him in any way. I do not agree with the majority that reasonable persons could conclude that Fisher was induced to enter the contract based on his ignorance of Speaks's personal interest and could conclude that but for this inducement Fisher would not have suffered the loss of his $50,000 in earnest money. Fisher suffered the loss of his $50,000 because he repudiated the contract after he discovered the erroneous appraisal report. This Court today holds that Speaks cannot be held liable for misrepresenting the value of the property or the accuracy of the appraisal report because Speaks was merely a conduit passing information reported by the appraiser. This Court also holds that Speaks did not owe Fisher a fiduciary duty to inform him of the obvious mistake in the appraisal report. Fisher cannot show that any action or inaction taken by Speaks resulted in the loss of Fisher's $50,000 in earnest money. The fact that one of the sellers was the owner of the real-estate company for which Speaks worked had no bearing on the erroneous appraisal report, the heart of the dispute in this case.
For these reasons, I would grant the application for rehearing. I dissent insofar as Part IV reverses a portion of the summary judgment for Speaks.